UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **BRANDON SIMON**, *et al.*, | : |
| | : |
| Plaintiffs, | : Case No. 1:18-cv-458 |
| | : |
| v. | : |
| | : Dlott, J |
| **KEVIN J. ISON DMD PSC, d/b/a** | : Litkovitz, M.J. |
| **ORTHODONTIC SPECIALISTS**, *et al.*, | : |
| | : |
| Defendants. | : |

**JOINT MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs and Defendants (the "Parties") jointly move this Court for entry of an Order:

1. Granting final approval to the $110,000.00 settlement set forth in the Settlement Agreement ("Agreement"), Doc. 36-1;

2. Approving class representative payments to Plaintiffs Brandon Simon and Lainey Hollingsworth in the amount of $3,500.00 each in recognition of their services to the class.;

3. Approving the payment of $55,000.00 in attorneys' fees and expenses to Plaintiffs' counsel ("Class Counsel");

4. Dismissing this action with prejudice; and

5. Retaining jurisdiction over this matter for six months for the limited purpose of enforcing the Agreement.

The settlement satisfies all criteria for approval of a class action settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23 ( e ) and as a fair and reasonable resolution of a

bona fide dispute over claims asserted under the Fair Labor Standards Act ("FLSA" 29 U.S.C. § 201, *et seq*., and comparable wage laws of the state of Ohio and Commonwealth of Kentucky which was reached as a result of arms'-length settlement negotiations conducted by counsel well-versed in employment law. In support, the parties state as follows;

MEMORANDUM IN SUPPORT OF JOINT MOTION

I. **Factual Background and Procedural History**

This settlement resolves claims that Defendants failed to properly calculate and pay overtime wages to certain non-exempt, hourly employees who worked more than 40 hours per week in violation of the the FLSA, the Ohio Minimum Fair Wage Standards Act, and the Commonwealth of Kentucky's wage and hour laws. This settlement was reached as a result of several months of exhaustive, arms'-length negotiations between the Parties. The settlement was granted preliminary approval by the Court on November 30, 2019 as fair, reasonable and adequate and the product of serious, informed and extensive arm's length negotiations between the Parties and as a fair and reasonable resolution of a *bona fide* dispute under the FLSA. The Court conditionally certified a Settlement Class consisting of all persons who worked as hourly and non-exempt employees for Defendants, and who worked in excess of 40 hours in any workweek, and who were not paid one and one-half times their regular rate of pay for the hours worked in excess of 40 in any such workweek.

The Court further permitted the settlement to proceed on a class-wide basis for recovery under state wage and hour laws, rather than proceeding as a collective action under the FLSA. As a result, any member of the Settlement Class could request to be excluded ("opt-out") from the Settlement Class by sending a written request for exclusion to Plaintiffs' counsel postmarked on or before the January 2, 2020 Exclusion Deadline.

On November 20, 2019, Defendants' Counsel provided Plaintiffs' Counsel with a Class List of the 61 eligible Class Members. On December 2, 2019, Plaintiff's Counsel mailed the Notice of Settlement and Right to Opt-Out of Settlement to the 61 Class Members. In response, six timely Opt-Out Forms were received, slightly less than ten percent of the total class.

The settlement is fair and exceptional in all respects. First, each Participating Settlement Class Member will receive the amount of lost wages owed to them. Further, an amount of $11,980.21 remains for distribution as liquidated damages. This amount will be divided amongst the 55 Participating Settlement Class Members as liquidated damages.

## II. Final Approval of the Settlement

Federal Rule of Civil Procedure 23 (e) mandates that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." In deciding whether to approve a class action settlement, the "ultimate issue" for the court is whether the proposed settlement is, "fair, adequate, and reasonable." *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983) District courts must "appraise the reasonableness of particular class action settlements on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D*, 475 U.S. 717, 727 (1985)

Settlement of claims in a private action for back wages under the FLSA, including the proposed notice plan, must be approved by either: (1) a state or federal court; or (2) the Secretary of the United States Department of Labor. 29 U.S.C. § 216(b), (c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Filby v. Windsor Mold USA, Inc.*, Case No. 3:13-cv-1582, 2015 U.S. Dist. LEXIS 30034, at *5 (N.D. Ohio March 11, 2015) (citation omitted). In approving such a settlement, the court must ensure that there is: (1) a "*bona fide* dispute" between the parties as to the employer's liability under the FLSA (*id.*); and (2) the

3

agreement is "fair, reasonable, and adequate ..." *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012); *Accord, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 at *2 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores*, 679 F.2d at 1353-55); *see also* Fed. R. Civ. P. 23(e). Courts view the adversarial nature of an FLSA case to be an indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. In light of these standards, final approval is eminently appropriate.[1]

### A. The Settlement Resolves a Bona Fide Dispute Between the Parties

As to the first factor of the Court's evaluation of the settlement of FLSA claims, this case involves disputed issues concerning Defendant's failure to pay overtime to nonexempt employees between May 22, 2016 and June 30, 2018. The existence of *bona fide* contested issues is clear: Defendants maintain that their prior failure to pay overtime was proper and that, in addition to having not violated the FLSA, Kentucky or Ohio state law, if it had violated the law, it had not done so willfully (as alleged by Plaintiffs).

Multiple disputed questions of fact and law exist – from the facts regarding the status of the Class Members, to the legal implications to be drawn from those facts, to what constitutes the proper standards for willfulness and good faith, and even to how damages are determined. Accordingly, as here, the existence of a *bona fide* dispute "serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under

---

[1] In considering these factors and determining whether to approve a settlement, the Court "does not resolve the legal and factual issues that are the basis of the underlying lawsuit." *Bronson v. Bd. of Educ. of City School Dist.*, 604 F. Supp. 68, 74 (S.D. Ohio 1984); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("[W]hile it is incumbent on the [] court to determine the propriety of the settlement, it need not resolve all of the underlying disputes."). A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d at 922.

the FLSA." *Filby*, 2015 U.S. Dist. LEXIS 30034, at *6; *Swigart v. Fifth Third Bank*, Case No. 11-cv-88, 2014 U.S. Dist. LEXIS 21690, at *3-4 (S.D. Ohio Feb. 19, 2014) (approving FLSA settlement where it reflected a reasonable compromise over contested issues, including whether Defendant properly classified Plaintiffs as exempt and Defendant's good faith defense.").

Inasmuch as both parties had a complete understanding of the issues from the course of the settlement discussions, information from the clients, as well as the extensive data and information produced, they understood the risks and potential course of protracted litigation. In Class Counsel's opinion, litigation of this action would have been detrimental to the claims of the Eligible Class Members – even though they may have stood to potentially receive a greater recovery – because the time to bring such claims would have continued to run until they received notice of the action and affirmatively opted-in (which, conceivably, may not have occurred until the middle or end of 2020, if at all). Against this backdrop, the Parties ability to reach an early settlement was a major achievement, and both parties' counsel support the settlement as fair and reasonable and certify that it was reached at arm's-length.

### B. The Settlement Is Fair, Reasonable, and Adequate

As to the second factor of the Court's evaluation of the settlement, in determining whether FLSA settlements are fair and reasonable courts consider "(1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest." *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-cv-00436, 2014 U.S. Dist. LEXIS 46846, *46-47 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 96695 (S.D. Ohio July 16, 2014); *Kritzer*, 2012

U.S. Dist. LEXIS 74994, at *19. *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors); *Williams v. Vukovich*, 720 F.2d at 922-23.. All seven factors will weigh in favor of final approval.

### (1) There Was a Bona Fide Dispute Under the FLSA About Which Both Parties Bore Significant Risks on the Merits

The settlement would mitigate serious litigation risk faced by both sides (and represents a good value in light of those risks), even though Plaintiffs' recovery could be greater if they succeeded at trial and survived an appeal. In a disputed wage and hour case involving overtime like this one, forecasting an outcome is not nearly as simple as estimating the risk of prevailing on the merits and adding some measure of litigation risk. For example, the estimated potential recovery by Plaintiffs must account for a large number of legal and factual contingencies, such as how many hours an employee worked, how many weeks per year the employee worked those hours, whether the employees can obtain a third year of damages under the FLSA (a question of willfulness), and whether the employees can obtain liquidated damages under the FLSA (a question of good faith). These are fact intensive questions that also depend on favorable legal determinations and when cases reach juries, the results can be unpredictable. *See Rotuna v. West Customer Mgmt. Group, LLC*, 09-cv-1608, 2010 U.S. Dist. LEXIS 58912, at *16 (N.D. Ohio June 15, 2010) ("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation.") (citation omitted); *see also Slaught v. Rex Performance Prods., LLC*, 16-cv-10159, 2017 U.S. Dist. LEXIS 191298, at *5 (E.D. Mich. Nov. 20, 2017) (granting final settlement approval where, among other things, "the uncertainty and delay of further litigation strongly supports the

reasonableness and adequacy of the [] settlement."); *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20-21 (approving settlement where the plaintiffs' "likelihood of success was far from certain" and noting that the lower the likelihood the more desirable the settlement) (citation omitted).

In addition, the recovery in settlement compared to the possible range of recovery is quite high. Had Plaintiffs prevailed on liability in the case and assuming a reasonable set of assumptions as to the hours worked, the actual recoverable wages (depending on whose analysis of the proper methodology for determining damages would be upheld) would have ranged from zero dollars (if Defendant's claim that certain employees did not work overtime) to $15,694.40 (for the nonexempt employees who worked the most overtime and received an amount equal to their lost wages as liquidated damages. As the participating Class Members were entitled to $36,019.79 in lost wages, and could have received an equal amount in liquidated damages, Plaintiff submits that the result here, where they estimate the recovery is up to **66.6%** (i.e., $48,000/$72,039.58) of the total wages Plaintiffs and the Eligible Class Members could have recovered based on the above range of exposure, is quite a fine one given all the risks attendant on trying such a case. **As indicated, the average value of the settlement awards is estimated to be over $872 per Participating Class Member, and Eligible Class Members stand to receive substantial monetary benefits to compensate for their unpaid overtime while working for Defendant.** Given these circumstances, counsel for the Parties submit that this is an exceptional result for Plaintiff and the Eligible Class Members.

    *(2)    The Case is Complex, Expensive and Will Likely Continue for Several Years.*

The settlement would enable the parties to avoid significant burdens and expenses. If the settlement were to be approved, the parties will not have to devote time and resources to discovery (including taking and defending depositions), a potentially lengthy trial, post-trial briefing, and

7

appellate proceedings. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *21-22 (approving settlement where, among other things, the parties would be likely to undertake great expense in pursuing discovery). Similarly, there is substantial litigation risk surrounding the issue of conditional certification of the collective action, as well as final certification/decertification of any conditionally certified collective action as well as class certification and possible decertification.

> **(3)** ***Class Counsel are Experienced FLSA Litigators Who Believe this Settlement is Fair and Reasonable***

Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich, supra*, especially when, as here, the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Class Counsel drew on their substantial experience in analogous wage and hour cases in order to provide Plaintiffs and the Eligible Class Members with a high degree of expertise in this field.[2] Indeed, both parties faced significant risk in proceeding with litigation. Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where

---

[2] The principal attorneys at the law firm of Meizlish & Grayson have also been actively involved in wage and hour litigation for over three decades, and have successfully litigated a number of FLSA cases in Ohio during that time, including: *Gentrup v. Renovo Services, LLC,* Case No. 1:07-CV-430 (S.D. Ohio)(claims of repossession agents); *Combs v. Trugreen Limited Partnership,* Case No. 1:08-CV-489 (S.D. Ohio)( service technicians);*Brown v. Flexicom, LLC*, Case No. 1:09-CV-745 (S.D. Ohio) (sales employees); *Engel v. Burlington Coat Factory*, Case No. 1:11-CV-759 (area managers); *Hendrix v. Total Quality Logistics*, Case No. 1:10-CV-649 (S.D. Ohio) (claims of inside sales representatives certified for class and collective treatment, currently pending). Additionally, the Finney Law Firm has been counsel in several class and collective similar matters and continues to serve as counsel for the same.

the bones are buried."); *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *22-23 (approving FLSA settlement and "defer[ring] to the judgment of experienced trial counsel" where, as here, documentary and deposition discovery informed the parties' settlement negotiations); *UAW v. Gen. Motors Corp.*, No. 05-cv-73991-DT, 2006 U.S. Dist. LEXIS 14890, *7 (E.D. Mich. Mar. 31, 2006) (noting that in evaluating a settlement "the endorsement of the parties' counsel is entitled to significant weight.").

As part of the scrutiny it applies to an FLSA collective action settlement, the Court should also "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citation omitted). Here, the allocations to Plaintiff and the Eligible Class Members were derived from damages which were calculated with the same formula, using each eligible employee's overtime worked during the class period. Counsel for the Parties wholeheartedly support the settlement and agrees that it is fair and in the best interests of the putative collective.

### (4) The Parties Conducted Substantial Pre-Settlement Discovery

There was a sufficient investigation and exchange of information both prior to and during mediation to allow counsel to act intelligently in negotiating and agreeing to this settlement. As indicated, Defendants provided Plaintiffs with detailed employment and payroll data for its employees which allowed counsel to make reasonable calculations of the potential damages in the case. During settlement negotiations, Defendants raised a number of legal and factual defenses which Plaintiff's counsel considered in concluding that settlement on the terms negotiated by counsel is in the best interest of the Eligible Class Members.

### (5) The Reaction to the Settlement Has Been Overwhelming Positive and No One Has Objected

Pursuant to the Agreement and the preliminary approval order of this Court, the Claims Administrator, Finney Law Firm LLC, sent Notice by First Class U.S. mail, postage prepaid, to each individual Collective Action Member who were provided a 30-day period to opt-out or object to any part of the settlement. Six exercised their right to opt-out, making the participation rate 90%. *See* Doc. 42, PAGEID 134.[3] The lack of objection is powerful evidence of the fairness of the settlement. *See Swigart,* 2014 U.S. Dist. LEXIS 94450, at *11; *Brotherton v. Cleveland,* 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). The settlement should, therefore, be approved.

### *(6) The Settlement Was Reached Through Arms-Length Negotiations and There Is No Risk of Fraud or Collusion*

The settlement results from arm's-length bargaining between counsel with substantial experience in FLSA collective action litigation following extensive pre-mediation discovery. Katherine Capito of Hissam Forman Donovan Ritchie, PLLC, who represents Defendants, has significant experience handling wage and hour and FLSA class actions on a nationwide scale. In turn, Finney Law Firm LLC and Meizlish & Grayson, which collectively represent Plaintiff, have particularly successful track records in wage and hour cases, including, for instance, significant experience in state and FLSA collective action cases. The settlement was reached only after the parties vigorously attempted to secure the most desirable outcome for their respective clients. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *23-24.

Fraud and collusion are absent, and it is in the public interest to approve the settlement. The history reflects lengthy settlement negotiations. The Parties believe that the settlement is fair and reasonable and, we submit, should be finally approved. *Kritzer*, 2012 U.S. Dist. LEXIS 74994,

---

[3] As part of the scrutiny it applies to an FLSA collective action settlement, the Court should also "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citation omitted). Here, the allocations to Plaintiff and the Eligible Class Members were derived from damages which were calculated with the same formula, using each eligible employee's earnings, weeks worked, and actual number of hours of overtime worked as the variable factors. Counsel for the Parties wholeheartedly support the settlement and agree that it is fair and in the best interests of the Parties and the Eligible Class Members.

10

at *24-25 (finding settlement was in the public interest because it "ends potentially long and protracted litigation").

### (7) The Law Favors Resolutions of FLSA Collective Actions

There is a strong public interest in promoting the settlement of disputes in general, and of collective actions, including FLSA cases like this one, in particular. *Swigart,* 2014 U.S. Dist. LEXIS 94450 at *11 (citing *Hainey,* 617 F. Supp. 2d at 679); *see also Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *19 (S.D. Ohio Jan. 26, 2011) (citing *Franks v. Kroger Co.,* 649 F.2d 1216, 1224 (6th Cir. 1981)).  The Court should enter final approval of this class action settlement and enter final judgment dismissing the Plaintiffs' and Participating Class Members' claims and closing this matter.  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, *24 (settlement was in the public interest where it ended "potentially long and protracted litigation.") (citation omitted).

### C. **Approval of Attorneys' Fees and Expenses**

Plaintiffs request approval of payment of $55,000.00, as full and complete satisfaction of any claim for attorneys' fees by Plaintiffs. Class Counsel is seeking this award in lieu of attorneys' fees that they might otherwise have been entitled to recover under 29 U.S.C. § 216(b) had they ultimately prevailed in this lawsuit. The fact that there were no objections to the fee and expense provisions of the settlement agreement is evidence that the requested fee is reasonable. *See Filby,* 2015 U.S. Dist. LEXIS 30034, at *5. This amount additionally reimburses Class Counsel for its role as Claims Administrator for this case. In total, this amount is below the amount Class Counsel would have been eligible to receive under a *Lodestar* calculation.

It is worth noting that Class Counsel undertook the representation on a purely contingent basis.  Acceptance of a case on a contingency fee basis supports the reasonableness of an attorney's

fee award "for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 U.S. Dist. LEXIS 79606, at *13 (W.D. Mich. 2007); *see also Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *29-30 ("Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee recovery here."). Thus, Class Counsel has borne all the risk that accompanies contingent-fee representation, including the prospect that the investment of substantial attorney time and resources would be lost. Class Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan,* 262 F. Supp. 2d 804m 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee").  "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc.*, 2011 WL 292008, at *14.

      **D.**  **Approval of Class Representative Fees**

Plaintiffs are seeking $7,000 in class representative fees for Brandon Simon and Lainey Hollingsworth jointly (i.e. $3,500.00 to each individual). "Numerous courts have authorized [service] awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); *see also Sand v. Greenberg,* 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to

12

compensate named plaintiffs for the services they provided and the risks they incurred [by participating].'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *18); *see also In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997) (service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case."). Indeed, in another misclassification overtime lawsuit in Ohio, the district court approved $10,000 service award payments to each named plaintiff. *See Stallard v. Fifth Third Bank*, No. 2:12-cv-01092 (W.D. Pa.) (Doc. 181); *see also Osman*, 2018 U.S. Dist. LEXIS 78222, *8-9 (awarding $7,500 service award to the named plaintiff).

Here, Plaintiffs fully participated in the investigation and settlement of this action, including informing Class Counsel of the facts initially, participating in innumerable telephone conferences, providing information and documents, regularly communicating with Class Counsel, and providing valuable information about Defendants' operations. The requested service award is proportional to his participation and is in line with awards approved by other courts. *Cf., e.g., In re Polyurethane Foam AntitSSI Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

### III. Conclusion

Based on the above, the Court should, respectfully, (1) grant final approval to the $110,000.00 settlement set forth in the Settlement Agreement ("Agreement"), Doc. 36-1; (2) approve the payment of class representative fees in the amounts of $3,500.00 each to Plaintiffs Brandon Simon and Lainey Hollingsworth in recognition of their contributions to this case; (3)

approve the payment of $55,000.00 in attorneys' fees and expenses to Plaintiffs' counsel ("Class Counsel"); (4) dismiss this action with prejudice; and (5) retain jurisdiction over this matter for six months for the limited purpose of enforcing the Agreement. A proposed Order is attached for the Court's consideration.

    Respectfully submitted,

    /s/ Katherine B. Capito_____
Katherine B. Capito (*Pro Hac Vice*)
Hissam Forman Donovan Ritchie PLLC
707 Virginia Street East, Suite 260
Charleston, WV 25301
(681) 265-3802
*Counsel for Defendants*

    /s/ Stephen E. Imm_____ _____
Stephen E. Imm
Finney Law Firm
4270 Ivy Pointe Blvd.
Suite 225
Cincinnati, OH 45245
(513) 943-5678
*Counsel for Plaintiffs*

    /s/ Bruce H. Meizlish_____ _____
Bruce H. Meizlish
Meizlish & Grayson - 1
830 Main Street
Suite 999
Cincinnati, OH 45202
(513) 345-4700
*Counsel for Plaintiffs*

    /s/ Deborah R. Grayson_____ \_\_\_\_\_
Deborah R. Grayson
Meizlish & Grayson - 1
830 Main Street
Suite 999
Cincinnati, OH 45202
513-345-4700
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a copy of the foregoing was electronically filed on January 20, 2020 through the CM/ECF for the USDC for the Southern District of Ohio and electronically served upon all counsel of record on the same date through the CM/ECF for the Southern District of Ohio.

              */s/ Stephen E. Imm*

              _____
              Stephen E. Imm (0040068)